JAY L. FIALKOW, executor, *vs*. DEVOE MOTORS, INC.
& another
(and two companion cases).

Middlesex.    January 8, 1971. — June 8, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, & QUIRICO, JJ.

*Practice, Civil*, Judicial discretion, Requests, rulings and instructions,
Charge to jury, New trial. *Conscious Suffering.*

There was no abuse of discretion in the manner in which the judge handled
alleged improper statements and arguments by counsel at the trial of
civil actions where his charge included an instruction that neither the
arguments of counsel nor their extraneous statements or remarks
were evidence. [572]

Restatement of a classification of cases on the subject of conscious suffer-
ing on the part of an injured person before his death. [574]

Evidence showing gasping, gurgling, heavy breathing and a very faint
noise coming from an injured person found entirely under an automo-
bile when it stopped seventy-two feet beyond its point of impact with
an overturned automobile which the injured person had been trying
to turn upright did not warrant a finding of conscious suffering on his
part before he died within an hour after the accident. [573, 574]

The record of actions for conscious suffering which did not include the
trial judge's entire charge disclosed that the instructions given were
adequate and accurate, and upon consideration of all of the defendants'
exceptions to instructions which were covered in their brief, no error
appeared. [575]

No abuse of discretion appeared in denial of motions of the defendants
for a new trial of two actions for death and one for personal injuries
on the grounds that the verdicts were against the weight of the evidence
and that the amounts of the verdicts were excessive. [576–577]

THREE ACTIONS OF TORT. Writs in the Superior Court dated
November 19, 1963, February 5, 1964, and February 19,
1964.

The actions were tried before *Tomasello, J.*

*Walter F. Henneberry* (*David H. Kopelman* with him) for
the defendants.

*Abner R. Sisson* (*Moses I. Simon* with him) for Arthur E.
Mignault.

*J. Newton Esdaile (Norman I. Jacobs* with him) for Jay L. Fialkow, executor.

*Robert F. Sylvia* for Phil David Fine, administrator.

QUIRICO, J.   These are three actions in tort for negligence arising out of a motor vehicle accident which resulted in the death of two persons and in personal injuries to a third person.   The cases are before us on the defendants' exceptions to several rulings made by the trial judge during the course of the trial, to his denial of motions for directed verdicts, to his instructions to the jury, and to his denial of motions for a new trial.

Sometime after 11 P.M. on April 5, 1963, a Renault automobile which was being driven northerly on Route 24 in Randolph by Arthur E. Mignault turned over and came to rest on its roof with Mignault trapped inside.   Route 24 is a divided highway, with four lanes for travel in each direction, separated by a median strip about thirty to forty feet wide.   The car lay across the most westerly of the northbound lanes which is the passing lane.   The road was practically level and its surface was dry.   The weather was clear and visibility was good.

A number of persons from passing or approaching automobiles stopped and assisted in trying to turn the Mignault automobile upright.   Included among those assisting were Frederick E. Penn and Earl E. Collins.   Before they were able to right the Mignault automobile it was struck by another automobile owned by and registered in the name of DeVoe Motors, Inc. (DeVoe) and driven by Walter E. Sprague and traveling northerly.   In the collision Mignault sustained personal injuries, and Penn and Collins sustained personal injuries which resulted in their deaths within about one-half to one hour thereafter.

The first case before us was brought by Jay L. Fialkow, as executor under the will of Penn, against DeVoe and Sprague.[1]   The declaration contains separate counts against

---

[1] The defendant Sprague died after trial of the cases.   Samuel Leader, Esquire, the administrator of the goods and estate of Sprague, has since been allowed to appear and defend in each of the three cases.

each defendant for conscious suffering, and separate counts against each for death. The second case was brought by the predecessor of Phil David Fine, as administrator of the goods and estate of Earl E. Collins,[2] against the same defendants, and his declaration is substantially the same as that in the Penn case. The third case was brought by Mignault against the same defendants. His declaration contains separate counts against each defendant for personal injuries. The trial judge submitted the cases to the jury on all counts, and they returned verdicts for the plaintiffs on all counts.

1. *Exceptions during trial.* It is obvious from the record before us that prior legal contests involving counsel for one of the plaintiffs and counsel for the defendants had left some still festering wounds and perhaps bitterness which affected their conduct in the trial of the present cases. It resulted in an unduly abrasive trial in so far as these two lawyers were concerned. They engaged in mutual personal accusations and recriminations, sometimes in the hearing of the jury, and now one of them complains that the trial judge should have done something about it. On one occasion counsel for the defendants asked that the other counsel be rebuked for a statement which he made and the court denied the request. On another occasion he moved for a mistrial because of a question put to one of his witnesses in the course of a vigorous cross-examination by the plaintiff's counsel, and the motion was denied. On seven occasions he arose to object to statements being made by the plaintiff's counsel in final argument to the jury, and in each instance the objection was overruled.

It would add nothing to our jurisprudence to try to determine which lawyer tossed the first irrelevant barb, which was the abuser and which was the abused, or to spread the details of the alleged improper statements and arguments on the printed pages of our permanent judicial pre-

---

[2] John R. Ambrogne, Esquire, who was the administrator of the goods and estate of Collins when the second case was started, died before trial of the cases, and Mr. Fine was appointed successor administrator.

cedents. It is sufficient to state that when a trial judge is faced with such a situation, he should and does have broad discretion to take whatever action he thinks is necessary to cope with and control the situation and to safeguard the rights of the parties. The trial judge, with the benefit of his presence in a vantage position when the alleged 'improper statement or argument is made, is in the best position to decide what corrective measures, if any, are required and when they should be taken. He has discretion to decide whether a mistrial should be declared or whether instructions should be given to the jury immediately or later as part of their final instructions. In short, he has discretion to decide whether any action is required and, if it is, what it should be and when it should be taken. This court will not intervene in such a case where no abuse of such discretion is shown. *Hess* v. *Boston Elev. Ry.* 304 Mass. 535, 540–541. *Shea* v. *D. & N. Motor Transp. Co.* 316 Mass. 553, 555. *Salter* v. *Leventhal,* 337 Mass. 679, 697. *Luz* v. *Stop & Shop, Inc. of Peabody,* 348 Mass. 198, 207. In the cases before us the trial judge included in his charge to the jury an instruction that neither the arguments of counsel nor their extraneous statements or remarks made during the progress of the trial are evidence. The defendants did not ask the court to give the jury any additional or different instructions on this point. The trial judge did not abuse his discretion in the manner in which he handled the alleged improper statements and arguments.

2. *Motions for directed verdicts.* Although the defendants' bill of exceptions claims error in the denial of their motions for directed verdicts in their favor on all counts in all three cases, their treatment of this subject in their brief presents a much more limited question to this court. The argument in their brief is limited to a claim that there was insufficient evidence of conscious suffering by the deceased Collins, and therefore that it was error to deny their motion for directed verdicts on counts 2 and 4 of the declaration in that case. We treat the exceptions to the denial

of such motions with respect to all other counts in the three cases as waived.

By reason of this limited argument, we are not asked to decide whether there was sufficient evidence of negligence on the part of the defendants to submit the cases to the jury. The only question for our decision is whether there was sufficient evidence to permit the jury to find conscious suffering by Collins in the period between the time of the collision and the time of his death. In making this decision we consider the evidence in its light most favorable to the plaintiff, disregarding evidence tending to prove the contrary. *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 448.

We summarize the evidence on this issue. Collins was found entirely under the automobile operated by Sprague when it stopped seventy-two feet beyond the point of its impact with the overturned Mignault automobile. A police officer who saw Collins there said that he was "bleeding from the face, and trying, gasping, you know." He also testified that when he went down to get Collins out, "his arm moved down." While Collins was under the car, the left side of his face was against the pavement. The officer saw Collins's eye looking at him. There was blood coming from him, a gurgling sound came from his mouth, and he was breathing heavily. In the opinion of the officer, Collins was then alive. The automobile operated by Sprague had to be jacked up to remove Collins. As Collins was being removed from under the automobile, he emitted a noise which a witness described as a moan. While Collins was being removed to the Milton Hospital, a very faint sound was heard from him. The hospital record said in part: "admitted 4/5/63 — 11:45 p.m., D.O.A. Clinical Diagnosis: pronounced dead 11:55 p.m." The death certificate for Collins gave the cause of death as "fractured skull and legs, struck by car."

The question before us is whether the evidence summarized above showing gasping, gurgling, heavy breathing, and a very faint noise coming from Collins after he was

injured is sufficient to create a jury issue on whether he suffered consciously. We hold that it is not. In our recent decision of *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 474–478, we collected, discussed and analyzed many of our decisions on this subject. We then concluded as follows (p. 477): "The foregoing review of our cases on this subject leads to the conclusion that they may be classified in three categories. 1. Cases wherein the sounds, movements, or both, of the decedent are insufficient in the light of common experience and present medical knowledge to warrant a finding of conscious suffering. 2. Cases wherein the acts, utterances or both are sufficient in the light of common experience to warrant a finding of conscious suffering regardless of expert medical testimony. 3. Cases wherein the sounds, movements, or both, are insufficient to warrant laymen finding conscious suffering, but which when supported by interpretive expert medical testimony could warrant a finding of conscious suffering." The case before us falls in the first category. *Allicia* v. *Boston, Revere Beach & Lynn R.R.* 294 Mass. 488, 490. *Melnik* v. *Perwak*, 295 Mass. 512, 513. *Ghiz* v. *Wantman*, 337 Mass. 415, 419. It was error to deny the defendants' motion for directed verdicts in their favor on counts 2 and 4 of the declaration in the Collins case.

3. *Instructions to the jury.* The defendants question the adequacy or sufficiency of the judge's instructions to the jury on the subjects of (a) conscious suffering, and (b) causation and the failure to give some requested instructions thereon. The defendants are faced with the threshold question whether they are entitled to raise this issue on their bill of exceptions which does not include the entire charge to the jury. While an alleged inaccuracy or error in an instruction given may often be determined without resort to the entire charge, the same is not necessarily true as to an alleged deficiency in the charge. *Farnum* v. *Ramsey*, 231 Mass. 286, 290. *Barnes* v. *Springfield*, 268 Mass. 497, 504. *Donnelly* v. *Larkin*, 327 Mass. 287, 289. *Growers Outlet, Inc.* v. *Stone*, 333 Mass. 437, 443. *Reid* v. *Hathaway*

*Bakeries, Inc.* 333 Mass. 485, 487. We need not decide this threshold question because in these cases the limited portions of the charge included in the record disclose that the instructions given were adequate and accurate.

The defendants requested three identical instructions on conscious suffering in the Penn and Collins cases.[3] The judge charged the jury in substance in accordance with the requests, and he was not required to give them in the exact language requested by the defendants. *Squires* v. *Fraska,* 301 Mass. 474, 476. Although excepting to the alleged failure to give their requests numbered 27, 28 and 29, the defendants did not ask the judge to give any further or different instructions on the subject of conscious suffering.

The defendants argue that the judge charged the jury that if they found Sprague was negligent, they should bring in verdicts for the same amounts in the Penn and Collins cases. The jury did just that, but the judge did not so instruct them. His instruction about which the defendants complain was limited to the counts for death where the damages would be based on the degree of Sprague's negligence, and the degree of negligence was the same as to both Penn and Collins. In any event, our action on the verdicts on the Collins counts for conscious suffering makes it unnecessary to pursue this question further.

The judge's original and supplementary instructions to the jury on the subject of causation, and the distinction between cause and condition, were adequate and correct in so far as they are included in the bill of exceptions. No detailed discussion thereof is warranted or required.

We have considered all of the exceptions to the judge's instructions to the jury which are covered by the defendants' brief, and we find no error.

4. *Motions for new trial.* On June 1, 1967, the defendants

---

[3] The requests were: "27. If the jury believes that there was no conscious suffering on the part of the deceased . . . [Penn or Collins], then there can be no recovery in this action for conscious suffering. 28. The burden of proof is upon the plaintiff to show that there was in fact conscious suffering. 29. The amount to be awarded in an action for conscious suffering depends upon the degree and the time that the deceased suffered consciously."

seasonably filed a motion for a new trial in the Collins case. The grounds for the motion were: "1. The verdict is against the weight of the evidence; 2. The verdict is against the law; 3. The amount of the verdict is excessive." The motion was denied. On July 10, 1967, the defendants filed separate motions in the Penn and Mignault cases requesting that they be permitted to file late motions for a new trial identical to the motion filed in the Collins case. Ultimately, the trial judge allowed the defendants' preliminary motion in the Penn case for late filing of the motion for new trial and denied the latter motion, and he denied the defendants' preliminary motion for late filing of the motion for new trial in the Mignault case. Since the result must be the same, we shall consider the motions for new trial as though they had all been seasonably filed and then denied.

By their motions for new trial the defendants raised no question of law which could not have been raised at the trial. This limits the motions to the grounds that the verdicts are against the weight of the evidence and that the amounts of the verdicts are excessive.

In *Perry* v. *Manufacturers Natl. Bank,* 315 Mass. 653, 656, we said: "It is doubtful whether any rule of practice has been more frequently stated than the general rule that the granting or refusal of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge. To attempt to collect the cases would be a waste of effort." In *Bartley* v. *Phillips,* 317 Mass. 35, 41–42, we said: "In a multitude of cases it has been said that the decision of the question whether a new trial should be granted for excessive or inadequate damages, or for other reasons, is within the 'discretion' of the trial judge." Substantially the same language has been used in subsequent cases too numerous to cite. In the cases cited above and in many later cases we have recognized the possibility of obtaining relief from this court if the trial judge abuses his discretion in either granting or refusing a new trial. However, that has been frequently coupled with the statement that: "Abuse of discretion in granting or refusing

a new trial can so seldom be found that actual instances in which this court has set aside the action of the trial judge on that ground are almost nonexistent, and it has repeatedly been stated that occasions when this court can do so are exceedingly rare." *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 61. *Galotti* v. *United States Trust Co.* 335 Mass. 496, 503. *Ellingsgard* v. *Silver,* 352 Mass. 34, 39. These cases are governed by the general rule. There was no abuse of discretion and therefore no error in the trial judge's denial of the defendants' motions for a new trial in the Penn and Collins cases and in the denial of the motion of the defendants for leave to file late a motion for a new trial in the Mignault case.

The defendants' exceptions to the denial of their motion for directed verdicts on counts 2 and 4 in the Collins case are sustained. All other exceptions are overruled.

*So ordered.*